321 So.2d 805 (1975)
Donald SYKES, Sr.
v.
Martha L. Square SYKES.
No. 7053.
Court of Appeal of Louisiana, Fourth Circuit.
November 11, 1975.
*806 Laborde & Brooks, John H. Brooks, New Orleans, for plaintiff-appellant.
Midlo & Lehmann, Rene Lehmann, New Orleans, for defendant-appellee.
Before SAMUEL, LEMMON and MORIAL, JJ.
LEMMON, Judge.
Donald Sykes appealed from a judgment dismissing his suit for separation based on cruel treatment. Mrs. Sykes answered the appeal, complaining of the dismissal of her reconventional demand for separation grounded on abandonment.
Both parties were college graduates. He had worked as an accountant and she as a schoolteacher from the time of their marriage in January, 1969 until their separation in January, 1974.
Sykes attributed their marital problems solely to his wife's refusal to allow him full control of the family income, which he claimed as a marital right of the head and master of the community. He testified: His income paid all the family expenses, while his wife kept her income and refused to tell him what she did with the funds. This became a constant source of friction which led to many quarrels of considerable intensity. When the quarreling reached a point he could no longer stand, he left.
Mrs. Sykes testified: They opened a joint checking account when first married, but her husband was such a poor manager *807 of finances that they were constantly short of money, despite adequate earnings. She then opened a separate account with her income and made double payments on each bill, so that by the time their baby was born eighteen months after their marriage they were out of debt and had paid off their only major loan (for the purchase of initial household furnishings) in one year instead of two as scheduled. She also purchased clothing for herself and the child and supplemented her husband's grocery purchases. In June, 1971, when her husband used an income tax refund for an unknown purpose without telling her about it, she wrote a check on their joint account for the same amount and used it to open a joint homestead savings account. Although she gave her husband a signature card for this account, he never mailed it to the homestead. Thereafter, she deposited $200.00 per month into this account (which she admitted was community property), and she also opened an account for their son, against her husband's wishes. In October, 1973, she asked her husband to "open up his finances" (she claimed he never would disclose the amount of his salary), and she would do the same. She decided to start depositing $600.00 per month (her approximate net salary) into the savings account, with the understanding that her husband's income would support the entire family. On other points, she denied that they quarreled about money, but admitted difficulties stemming from her husband's refusal to take her to social activities. Despite, this, she loved him and begged him not to leave.
Thus, the parties disagreed as to the cause of their marital discord. Each claimed complete ignorance of the other's income. He claimed violent quarrels over money, while she denied any quarrels whatsoever. She claimed that upon her request to "open up" their finances, she deposited all of her wages into the savings account with the understanding that his income would be used to support the family, but he claimed ignorance of any such understanding. He claimed he paid all family expenses, while she claimed she paid numerous household bills. In short, each complained of the other's handling of individual income.
The unreasonable behavior described by Mr. Sykes (that his wife refused use of her income to help pay households bills and that she lost her temper and became violent when he questioned her about this income) would perhaps be sufficient to destroy domestic tranquility and thus constitute cruel treatment of such a nature as to render living together insupportable. Nevertheless, we cannot say his unsupported testimony was accepted by the trial judge, since his wife denied such behavior and the judgment dismissed his suit.
On the other hand, we cannot say that Mrs. Sykes proved the elements necessary for abandonment. The record, while showing that considerable friction existed in the Sykes' household, did not establish whose fault was the cause of the friction, without a credibility evaluation of the conflicting testimony.
Mrs. Sykes, nevertheless, contends her husband must be adjudged guilty of abandonment since he failed in his demand for separation based on cruel treatment. We disagree.
"Lawful cause" necessary to justify a spouse's leaving the matrimonial domicile is not the equivalent of lawful grounds for a separation from bed and board under C.C. art. 138. When spouses are incompatible and come to this realization after sufficient reflection and reasonable attempts to resolve their differences, the law does not require them to continue living together until one or the other finally gathers sufficient evidence to prove one of the grounds listed in C.C. art. 138. If *808 neither spouse has grounds for legal separation, they can agree to live separately until the passage of time required for obtaining a separation on the grounds of living apart, and the party leaving the matrimonial domicile is not automatically guilty of abandoning the spouse who remains.
Furthermore, this agreement to live separately may be express or may be implied from the action of the parties. A wife, for example, cannot implore her husband to continue living together on terms dictated by her and then claim abandonment when he declines to do so except on other terms. Since a successful marriage involves giving and taking, each spouse must do both, and when each declines to give, each will be deemed to have agreed to live separately. In such a case, unless one spouse can prove the other was principally at fault in the original separation and remained unwilling to remedy the fault, neither is entitled to a separation based on fault.
In the present case the record does not establish the fault of either spouse as the principal cause of the initial separation. Mr. and Mrs. Sykes could not agree on family finances, and this failure to agree carried over into other disagreements. Nevertheless, we do not regard financial disagreements any differently than disagreements as to how to raise children, where to live, when to have marital relations, or any other significant subject upon which two reasonable spouses must reach an agreement to enjoy marital harmony. Here, the spouses did not reach an agreement, and there was no preponderating proof (without a credibility determination) that the unreasonableness of either spouse caused the failure to agree. We can only conclude, at least on this record, that the spouses agreed they could not or would not agree.
The judgment is affirmed.
Affirmed.