373 So.2d 1380 (1979)
Renee Leslie Kagan, Wife of Arthur J. LEVINE
v.
Arthur J. LEVINE.
No. 10067.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1979.
*1381 The Law Office of Emile L. Turner, Jr., Emile L. Turner, Jr., New Orleans, for plaintiff-defendant in reconvention-appellant.
Jerald N. Andry and Gilbert V. Andry, III, New Orleans, for defendant-plaintiff in reconvention-appellee.
Before REDMANN, BEER and GARRISON, JJ.
GARRISON, Judge.
This separation action comes before us on two appeals by the wife. The husband has answered both appeals.
*1382 The first appeal is from a March 15, 1978 judgment awarding Renee Levine alimony pendente lite in two amounts: retroactive alimony of $1,000 a month from the date her petition was filed through February 1978, and prospective alimony of $700 a month plus one-third of the husband's gross income above $16,900 derived from non-community sources, beginning on March 1, 1978. This judgment also permitted the retroactive alimony owed by the husband to be credited against his half-interest in the community property taken by the wife when she left him.
The second appeal is from a June 23, 1978 judgment in which the trial judge dismissed the wife's petition for separation grounded on cruel treatment, but granted the husband's reconventional demand grounded on abandonment. In that judgment the court also awarded custody of the minor child to the wife, and ordered the husband to pay her $400 a month in child support. There was no provision for alimony pendente lite.

I. JUDGMENT OF MARCH 15, 1979
As to this judgment, Renee Levine contends that the judge should have awarded her $1,800 a month, both retroactively and prospectively. She also contests that part of the judgment which allows the husband to credit alimony payments against his half of the community property in the wife's possession. The husband, on the other hand, contends that both the retroactive and the prospective awards were too high, because his wife failed to show that she was in necessitous circumstances.
La.Civ.Code Art. 148 provides that a wife shall be allowed alimony pendente lite if she does not have a sufficient income for her maintenance. A frequently-stated jurisprudential rule is that alimony pendente lite should be in an amount adequate to maintain the wife and children in a living standard comparable to that they enjoyed prior to the separation. Hall v. Hall, 348 So.2d 707 (La.App. 1st Cir. 1977). Nonetheless, alimony must be in proportion to the needs of the wife and the means of the husband. La.Civ.Code Art. 148; Hall v. Hall, supra. The need must be proven and the amount of alimony fair and just to each party. Hartley v. Hartley, 336 So.2d 291 (La.App. 1st Cir. 1976). Speculative evidence as to amount of need cannot be considered, however. Best v. Best, 337 So.2d 672 (La.App. 3rd Cir. 1976). Actual needs for maintenance and support must first be ascertained. Shepard v. Shepard, 334 So.2d 745 (La.App. 3rd Cir. 1976).
It is obvious that the varying amounts of alimony the trial judge awarded were attempts to juggle the various rules stated above, considering Arthur's varying income during the periods covered by the judgment.[1] Many of the items on Renee's expense list were admittedly speculative, since she and the child, Seth, were living with her parents. Arthur continued to be employed as a merchant marine officer through February 1978, and the $1,000 a month award obviously was in consideration of his high income in that job. We see no abuse of discretion in it, for although it was not equal to the amount Renee was receiving before she left Arthur, nonetheless it was more than she proved she needed. We consider it to be a fair balance among conflicting considerations. See Favalora v. Favalora, 368 So.2d 173 (La.App. 4th Cir. 1979).
Further, it was not error for the court to allow Arthur to receive credit for retroactive alimony against his half of community property in Renee's possession. After all, she would owe him his half anyway; this method simply allows a quicker settling-up on paper. See Nelson v. Nelson, 318 So.2d 68 (La.App. 1st Cir. 1975).
The prospective award of $700 per month plus one-third of income above $16,900 *1383 derived from noncommunity sources took into consideration Arthur's reduced income after quitting the merchant marine service. It also allowed for any income Arthur might make from his very limited practice of law. Renee argues that the alimony award should not have been reducedthat Arthur quit going to sea and reduced his income purposely to avoid supporting his family. She implies, in effect, that the court should maintain a high award and thereby force Arthur to go back into the merchant marine service. Although it is true that a husband may not quit his job to avoid his familial obligations, we do not think that is the situation here. Although Arthur's income was greatly reduced when he left his previous job, it is still a reasonable amount. We conclude that the trial judge did not abuse his discretion with the $700 award.

II. JUDGMENT OF JUNE 23, 1979
As to the second judgment, the wife appeals the finding that she was at fault in the separation. She also is dissatisfied with the money award, partly because it is only $400 a month, and partly because it is specified to be child support without any alimony provision. The husband is satisfied with this second judgment, except that he wishes the decree modified to allow him reasonable visitation rights and to clarify that the wife's custody of the child is pendente lite rather than permanent.
A. Alimony Award
In this judgment the court awarded $400 per month child support, but made no award for alimony. Since alimony pendente lite is not dependent on the fault of the wife, but only upon whether her income is sufficient for her needs, this was clearly error. Moreover, Arthur's income had increased at time of trial from the $16,900 projected at the March hearing to $19,500. Neither his nor Renee's listed expenses had changed significantly. Accordingly, we conclude that the district judge should have awarded $700 per month alimony and child support. We consider here, as above, the rules that a separated husband must support his wife and child as nearly as possible in their former lifestyle considering their needs and his income. Gray v. Champagne, 367 So.2d 1309 (La.App. 4th Cir. 1979).
B. Merits of Separation Action
The trial judge gave no Reasons for Judgment regarding his ruling on the merits of the separation action. By granting Arthur's reconventional demand and dismissing Renee's petition, obviously the judge concluded that Arthur's actions were not such cruelty as to make living with him insupportable, but rather that Renee had no lawful cause to abandon the matrimonial domicile.
The testimony showed that apparently the major disputes between the parties were over Arthur's weight problem, and also over his working so much. Although Arthur is qualified to practice law in Louisiana, his law practice was very minimal and was handled mostly by his associates. The bulk of his income was earned from his job as a merchant marine officer. This entailed his being gone on sea voyage for long periods of time. Renee complained about this. Also, apparently, Renee and Arthur bickered constantly. The testimony shows that Arthur had an explosive temper and expressed his rage by striking inanimate objects. However, he never struck Renee or, as far as the record shows, ever threatened to strike her.
Arthur was overweight and Renee began refusing to have sexual relations with him, on the ground that he was physically repulsive. She made remarks urging him to lose weight, which he considered to be nagging, and they argued about this. In March or April 1977, Renee refused to let him sleep in the same bed with her. They had a quarrel and Arthur told Renee to get a divorce if she felt like that. Shortly thereafter, he was admitted to the hospital and diagnosed as a mild diabetic. After a two-week stay, *1384 he came back home and they reconciled to the extent of sleeping in the same bed again, although they still did not have sexual relations. Arthur was under the impression that they were going to try again to make the marriage work. He left in May 1977 to go to sea again, but promised Renee that after this one last trip he would take a shore-based job. Renee apparently agreed to this, and they parted on amicable terms. While he was gone, she wrote him frequent letters, never indicating that she planned to leave him. She did not move out until right before he was scheduled to return home, in September 1977. He first learned that she had moved out when he arrived home and she was not there.
Testimony from Daniel White, who lived as a guest in the Levines' home for a year-and-a-half, indicated that there were faults on the part of both spouses. However, nothing seems so severe to us that we can second-guess the trial judge's conclusion that Arthur's faults were not such as to make living with him insupportable. Renee simply did not carry her burden of proof. As to Arthur's contention that Renee left him without just cause, we must agree with this under the circumstances. It is clear from the record that the parties had effected a reconciliation, even though they still were not having sexual relations. Arthur seems to have accepted Renee's refusal of intercourse, at least insofar as he did not raise it against her as a ground for separation. Renee clearly led Arthur to understand, during the time he was away, that she agreed to his suggestion that they try again when he returned. While he was at sea, he gave her no new cause to leave him.
It is true that "lawful cause" necessary to justify a spouse's leaving the matrimonial domicile need not be such as to constitute lawful grounds for separation. Sykes v. Sykes, 321 So.2d 805 (La.App. 4th Cir. 1975). Nonetheless, under the circumstances described in the record, the trial judge did not err in concluding that Renee left without lawful cause. Further, we must agree that however annoying Arthur's weight problem and his explosive temper were, the testimony in the record does not show that his actions were such as to make living with him insupportable. The conclusions of the trial judge on these points are factual determinations, and in the absence of manifest error this court cannot reverse. Canter v. Koehring Co., 283 So.2d 716 (La. 1973). We affirm the district court's ruling dismissing Renee's petition for separation on the ground of cruel treatment, and granting Arthur's reconventional demand for separation on the ground of abandonment.

IV. CONCLUSION
Accordingly, the judgment of March 15, 1978 is affirmed.
The judgment of June 23, 1978 is amended to award, in addition to the $400 per month child support, $300 per month alimony to Renee Leslie Kagan Levine. The decree is further amended to award Renee Levine temporary custody of the minor child of the marriage, Seth Levine, and to allow Arthur J. Levine reasonable visitation rights. In all other respects the judgment of June 23, 1978 is affirmed.
JUDGMENT OF MARCH 15, 1978 AFFIRMED; JUDGMENT OF JUNE 23, 1978 AMENDED AND AFFIRMED.
REDMANN, Judge, concurring in part and dissenting in part.
The judgment's "credit against the community property she withdrew" appears to provide that the wife's obligation to return the $6,000 cash is offset by (almost) six months alimony at $1,000. The judgment does not contemplate that the husband's half should bear that community expense. That is an accounting question, properly treated at the partition of the community rather than by present obiter dictum.
The total alimony for wife and child should be $800 because the husband's salary *1385 is over $200 a month more than when $700 was awarded despite $1,000 having been awarded for prior months. The $700 award took into consideration projected earnings of $16,900 and true earnings became $19,500. I concur in the modification of judgment that raises the total to $700 per month but I would award $800.
NOTES
[1] His income varied from approximately $46,000 a year at the time Renee left him, to a projected $16,900 at the time this alimony rule was held.